**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MEREDITH FAW, individually and on behalf of all others similarly situated**<br><br>**Plaintiff,**<br><br>v.<br><br>**VILLANOVA UNIVERSITY**<br><br>**Defendant.** | **CIVIL ACTION NO.  23-3897** |

<u>**MEMORANDUM OPINION**</u>

Rufe, J.                                                                                          **June 28, 2024**

Plaintiff Meredith Faw filed suit against Defendant Villanova University ("Villanova"), on behalf of herself and all others similarly situated, alleging breach of implied contract and unjust enrichment. The claims arise from disruptions to Villanova's operations due to the COVID-19 pandemic, which included a transition to fully remote learning and the cancellation of on-campus services and events. Villanova has moved to dismiss the Complaint. For the reasons set forth below, Villanova's Motion will be denied.

## I.      BACKGROUND

The following facts, as alleged in the Complaint, are taken as true for purposes of deciding Villanova's Motion to Dismiss. Plaintiff, a citizen of New Jersey, was an undergraduate student at Villanova during the Spring 2020 semester.[1] She and other full-time students were charged $27,275 in tuition, a $180 General Fee, and a $185 Health and Wellness Fee for the semester.[2] The semester began on January 13, 2020 and was scheduled to end on May 11, 2020.[3]

---

[1] Compl. ¶¶ 14, 3 [Doc. No. 1].

[2] *Id.* ¶¶ 23, 33.

[3] *Id.* ¶ 22.

On March 13, 2020, Villanova announced that it was closing its campus due to the COVID-19 pandemic, and all students were required to leave by March 15.[4] For the rest of the semester, all classes were offered only in a remote online format, with no in-person instruction or interaction.[5] On-campus services, recreational events, and student activity events were cancelled.[6]

There are no allegations in this case that Villanova's modified operations in response to the pandemic were improper. Nor are payments for residence hall rooms or dining hall plans at issue, as Villanova provided pro-rated refunds for those student expenses.[7] Rather, Plaintiff challenges only Villanova's "decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such for the entire duration of the Spring 2020 semester."[8] On October 6, 2023, Plaintiff filed a Complaint on behalf of herself and others similarly situated, raising claims under state law for breach of implied contract and unjust enrichment. Villanova moved to dismiss the Complaint for failure to state a claim. That Motion has been fully briefed and is now ripe for disposition.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference

---

[4] *Id.* ¶ 36.

[5] *Id.* ¶¶ 37, 5.

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 39.

[8] *Id.* ¶ 12.

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

that the defendant is liable for the misconduct alleged."[10] A plaintiff's "allegations must be enough to raise a right to relief above the speculative level"; something more than a mere *possibility* of a claim must be alleged.[11] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[12]

At the motion to dismiss stage, courts are not tasked with assessing the probability of whether the alleged facts can or will be proved.[13] Rather, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[14] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[15] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[16] Courts are not, however, bound to accept as true legal conclusions framed as factual allegations.[17]

---

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *Twombly*, 550 U.S. at 555 (citations omitted).

[12] *Id.* at 562 (quotation marks and citations omitted).

[13] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

[14] *Id.* (quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556).

[15] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558–59.

[16] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

[17] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Twombly*, 550 U.S. at 555.

### III.     DISCUSSION

This case is one of many putative class actions across the country seeking the reimbursement of tuition and fees due to the COVID-19 shutdowns at our Nation's universities. In *Hickey v. University of Pittsburgh*, the Court of Appeals for the Third Circuit addressed two of those cases, brought against Temple University and the University of Pittsburgh.[18] After the district courts granted the defendant universities' motions to dismiss, the Third Circuit reversed in part. It held that the plaintiffs had plausibly alleged breach of an implied contract based on the universities' promise to provide "in-person education in exchange for tuition;" that the plaintiffs had sufficiently pleaded implied contract claims as to certain mandatory fees; and that in the alternative, the plaintiffs had adequately pleaded unjust enrichment based on the universities' retention of all tuition and fees despite allegedly having saved money from the closures.[19]

The *Hickey* decision, which is binding precedent upon this Court, is consistent with recent decisions from other circuit courts addressing similar claims.[20] Moreover, district courts in this Circuit have denied motions to dismiss claims of implied contract and unjust enrichment against universities for pandemic-related shutdowns both before and after *Hickey* was decided.[21] Villanova contends that this case is factually distinguishable from the others. As discussed below, the Court disagrees, and it holds that dismissal of the Complaint is inappropriate at this early stage of the case.

---

[18] 81 F.4th 301 (3d Cir. 2023).

[19] *Id.* at 312, 315–16.

[20] *See Rynasko v. N.Y. Univ.*, 63 F.4th 186 (2d Cir. 2023); *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022); *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101 (5th Cir. 2022); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873 (7th Cir. 2022).

[21] *See Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44 (D. Del. 2021) (Bibas, J., sitting by designation); *Camden v. Bucknell Univ.*, No. 23-1907, 2024 WL 760232 (M.D. Pa. Feb. 23, 2024).

### A.  Breach of Implied Contract

1.  <u>Plaintiff Plausibly Alleges the Existence of an Implied Contract</u>

It is hornbook law that contracts may be implied in fact.[22] Under Pennsylvania law, "[a] contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances."[23] Villanova contends that implied-in-fact contracts, like other types of contracts, must contain terms sufficiently definite to be enforced, and that "the only 'sufficiently definite' term implied by [its] publications and offerings . . . is an education and the provision of academic credits in exchange for tuition, a service that Villanova indisputably provided."[24] That argument is inconsistent with recent and binding Third Circuit precedent.

In *Hickey*, the Third Circuit reviewed three sets of alleged university practices which, it held, plausibly supported an implied-in-fact contract for the specific undertaking of providing students with in-person, on-campus instruction and the "campus experience": (1) "frequent references to in-person instruction in university publications;" (2) "the schools' tradition of in-person instruction;" and (3) "their different marketing and price structure for online programming . . . ."[25] Those allegations, the Third Circuit concluded, "support[ed] a reasonable inference that the parties impliedly contracted for in-person education . . . ."[26]

---

[22] Restatement (Second) of Contracts § 4 (Am. L. Inst. 1981) ("A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct.").

[23] *Elias v. Elias*, 237 A.2d 215, 217 (Pa. 1968).

[24] Def.'s Mem. Supp. Mot. Dismiss at 6 [Doc. No. 8].

[25] *Hickey*, 81 F.4th at 314.

[26] *Id.*

Regarding the first category of allegations, Villanova suggests that its marketing materials did not tout the benefits of an on-campus experience to the same extent as the statements made by Temple University and the University of Pittsburgh in *Hickey*. However, the representations highlighted in the Complaint appear sufficiently definite (at least at the motion to dismiss stage) to plausibly allege an implied-in-fact contract, particularly when compared to *Hickey* and similar cases. Quoting the university's website, the Complaint alleges that Villanova promoted its campus's "stunning 260 acres . . . nestled in the safe, storied and lush Main Line, just 12 miles (19 km) west of Philadelphia."[27] Villanova advertised its "[t]hree campus rail stops" for "quick access to all that Philadelphia has to offer: from culture to dining to the arts to professional sports;"[28] a "car sharing service or free weekend shuttle to visit the King of Prussia Mall;" and that "[o]utdoor enthusiasts" could "tap into their interests with Valley Forge National Historical Park a short ride away."[29] The webpage cited in the Complaint further stated that "[t]he best way to learn about Villanova is to experience our suburban Philadelphia campus in person," and it encouraged prospective attendees to "explore the Nova Nation!"[30]

Additionally, the Complaint cites statements on Villanova's website representing that it "provides exceptional opportunities for a wide range of academic experiences, including *hands-on research*, interdisciplinary collaboration and *experiential learning*;"[31] that its "acclaimed faculty are at the core of Villanova's vibrant academic community . . . [and] are innovative and

---

[27] Compl. ¶ 24 [Doc. No. 1].

[28] *Id.*

[29] *Id.*

[30] Villanova Univ., *Visit Villanova University!*, (April 12, 2018, 12:27 AM GMT), http://www1.villanova.edu/content/main/oncampus.html [https://web.archive.org/web/20180412002723/http://www1.villanova.edu/content/main/oncampus.html].

[31] Compl. ¶ 26 [Doc. No. 1] (emphasis added).

engaged *classroom teachers*;"[32] that its campus included "three fitness centers on campus for use by Villanova students, faculty and staff," a "new performing arts center" with "high tech performance spaces, studios and classrooms that support education and artistic innovation," and a new pedestrian bridge "making the entrance to Villanova's beautiful campus . . . safer and easier for students;"[33] and that students could "find [their] niche in one of our 160 student organizations on campus," including intramural and club sports, and "22 recognized and active fraternities and sororities . . . mak[ing] up approximately 32% of Villanova's student body."[34]

These statements are indistinguishable from those the Third Circuit found sufficient to survive the motions to dismiss in *Hickey*. There, as here, students alleged that the defendant universities formed an implied-in-fact contract based on substantively identical references to geographic benefits ("When you come to Temple, you also come to Philadelphia"), "experiential learning," "'state-of-the-art' facilities," "hundreds of student organizations," and "collaboration with faculty and academic units . . . ."[35] *Hickey* makes clear that such statements, "viewed in context with the Students' payment of tuition and registration for in-person classes prior to the campus closures," may "support a reasonable inference that in-person education and access to campus resources were among the benefits of the matriculation bargain."[36]

With respect to the second relevant category in *Hickey*, Villanova does not challenge the Complaint's allegation that it had a longstanding, pre-pandemic tradition of providing in-person

---

[32] *Id.* ¶ 27 (emphasis added).

[33] *Id.* ¶¶ 30, 28.

[34] *Id.* ¶¶ 29–30.

[35] *Hickey*, 81 F.4th at 312.

[36] *Id.* (citing *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 668–69 (7th Cir. 2023)). The Third Circuit rejected the universities' argument that such statements were too generalized and aspirational to constitute binding commitments. *Hickey*, 81 F.4th at 312–13.

education.[37] Although the materials relied upon in the Complaint indicate that Villanova offered some online degree programs and other remote course offerings before the pandemic,[38] the same was true for at least one of the defendant universities in *Hickey*.[39] Nevertheless, the Third Circuit held that "the Universities' tradition of providing in-person education—including to the Students themselves prior to March 2020," ultimately "support[ed] the Students' implied contract theory."[40] There is no indication in the Complaint that Plaintiff intended to enroll in one of Villanova's online-only programs; rather, Plaintiff alleges that she *in fact* received in-person instruction (with all of the attendant benefits of an on-campus education) before the campus closed. These allegations support Plaintiff's implied-contract theory of liability.

Turning to the third category, the Complaint generally alleges that it would have been cheaper for Plaintiff and other Villanova students to have obtained an online-only education compared to the in-person, on-campus experience they signed up for, but the Complaint makes only vague references to "offering[s] in the same geographic location and nationwide" and "academic research show[ing] that online programs are typically the cheaper alternative."[41] In other words, Villanova is correct that there are no allegations of a price difference between the in-person and online undergraduate offerings *at Villanova*.[42] However, the Court is not

[37] Compl. ¶ 20 [Doc. No. 1]; *see generally* Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 8].

[38] *See, e.g.*, Villanova Univ., *Villanova University Catalog, Undergraduate Studies 2019–2021*, at 234, https://www1.villanova.edu/dam/villanova/provost/Catalogs/2019-21-ug-coursecatalog.pdf (last visited May 24, 2024) (online BSN track for registered nurses, which was set to close in December 2021 and was no longer accepting applicants); *id.* at 238 (offering hybrid and online tracks for some but not all degree programs through the College of Professional Studies).

[39] *Hickey*, 81 F.4th at 306 ("Temple also offers fully online distance-learning programs, which are separately advertised and priced.").

[40] *Id.* at 313 (citing *Crawford's Auto Ctr., Inc. v. Pa. State Police*, 655 A.2d 1064, 1066 (Pa. Commw. Ct. 1995)).

[41] Compl. ¶ 42 n. 18.

[42] Def.'s Mem. Supp. Mot. Dismiss at 7 [Doc. No. 8].

persuaded that an identical price between Villanova's in-person and online offerings is determinative here. The Third Circuit held in *Hickey* that the "premium" paid for in-person education was one of several supporting indications that "in-person education was key to the bargain,"[43] but it did not suggest that a price differential is required to adequately plead an implied-contract claim. As the Second Circuit has persuasively observed, "the presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages," but it does not necessarily follow "that a differential between in-person and online classes is a necessary condition for plausibly alleging an implied contract for in-person courses and services."[44]

Taking each of these supporting allegations into consideration, the Court holds that the references in Villanova's publications to its on-campus services and education, as well as its longstanding tradition of providing in-person instruction to its students, are sufficient to state a claim for breach of implied contract.

2. <u>Dismissal Is Not Warranted on the Basis of Accepted Modification or Waiver</u>

Villanova argues in the alternative that it was excused from performing its obligations under any implied-in-fact contract because Plaintiff willingly accepted Villanova's modification to the contractual terms. Under Pennsylvania law, a contract "may be modified by subsequent agreement through words, written or oral, or by conduct of the parties."[45] A modification to an

---

[43] *Hickey*, 81 F.4th at 313.

[44] *Rynasko*, 63 F.4th at 199. To be clear, the Court does not address here the requirements for class certification under Federal Rule of Civil Procedure 23, which are not yet ripe for consideration by this Court.

[45] *In re Labrum & Doak*, No. 98-4780, 2000 WL 1204646, at *7 (E.D. Pa. Aug. 23, 2000) (collecting cases); *see also United States v. LeCroy*, 348 F. Supp. 2d 375, 384 (E.D. Pa. 2004) ("[T]he fact of agreement as to a modification may be implied from a course of conduct in accordance with its existence." (citing 17A C.J.S. Contracts § 410)).

existing contract requires the assent of both contracting parties, must be supported by legally sufficient consideration, and must otherwise meet the requirements for contract formation.[46] The conduct of a non-modifying party may operate as an acceptance of a modification, but only "after notice of the impending modifications and an opportunity to accept or reject it."[47]

This Court is persuaded by the recent reasoning of another district in this Circuit, addressing an identical argument raised in a putative class action against Bucknell University in the Middle District of Pennsylvania.[48] In that case, the court noted that tuition and fees had already been paid in full to Bucknell for the Spring 2020 semester, and it was speculative at best to suggest that students could have opted out of remote instruction in exchange for a refund or credit toward a future semester.[49] The court further observed that it was unclear how Bucknell's unilateral announcement of a transition to remote learning provided the plaintiff a reasonable opportunity to reject that supposed proposal.[50] That sound analysis applies here.

Villanova's announcement on March 13, 2020, as cited in the Complaint, stated simply that "[a]ll students are required to leave campus by this Sunday, March 15" and that Villanova would "continue with the previous plan of teaching all classes online . . . ."[51] Although the announcement contained a vague acknowledgement "that there are still many details to be

---

[46] *Shedden v. Anadarko E. & P. Co., L.P.*, 136 A.3d 485, 490 (Pa. 2016).

[47] *Camden*, 2024 WL 760232, at *3 (citing *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 454 (W.D. Pa. 2019); Restatement (Second) of Contracts § 69(1)(a)).

[48] *Camden*, 2024 WL 760232, at *3.

[49] *Id.*

[50] *Id.*

[51] Villanova Univ., *March 13 Update from the President*, (Aug. 12, 2020, 11:54 AM GMT), https://www1.villanova.edu/villanova/studentlife/health/center/Coronavirus/mar-13-coronavirus-update.html [https://web.archive.org/web/20200613003830/https://www1.villanova.edu/villanova/studentlife/health/center/Coronavirus/mar-13-coronavirus-update.html].

worked out and many questions that you may have," nothing in the announcement (or any of the other allegations in the Complaint) suggests that withdrawal for a refund was an option.[52] Along similar lines, Villanova suggests that Plaintiff waived her contractual right because her conduct—specifically, her attendance at remote classes and her acceptance of credits—was inconsistent with an intent to enforce an existing contract. Waiver is a question of fact for a jury and is not appropriate for resolution on a motion to dismiss.[53]

     3.   <u>Plaintiff Plausibly Alleges That Her Tuition Payments Were Consideration for On-Campus Education</u>

Separately, Villanova contends that even if Plaintiff has plausibly alleged an implied promise to provide an on-campus experience, "any such experience was as consideration not for tuition but for room and board . . . and a portion of the General Fee and Health and Wellness Fee . . . ."[54] In response, Plaintiff cites the Complaint's allegations "that she and other students paid *both* tuition and fees in exchange for in-person education and an on-campus experience."[55] The Court agrees that Plaintiff has adequately alleged payment of "tuition in the Spring 2020 semester to enjoy everything Villanova offered [her], including on-campus resources, campus community, and in-person education for the entire Spring 2020 term."[56]

---

[52] *Id. Compare* Def.'s Mem. Supp. Mot. Dismiss at 12 [Doc. No. 8] (suggesting that Plaintiff could have "timely request[ed] a refund of her tuition or declin[ed] to resume courses until Villanova reinstated on-campus classes") *with* Pl.'s Resp. Opp'n Mot. Dismiss at 13 [Doc. No. 9] ("[T]his was not a legitimate 'take it or leave it' offer because students had no choice to 'leave it' *and* receive a refund.").

[53] *Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 256 (3d Cir. 2011) (citing *Hanover Const. Co. to Use of Ede v. Fehr*, 139 A.2d 656, 658 (Pa. 1958)); *see also Meng v. New Sch.*, 686 F. Supp. 3d 312, 322 (S.D.N.Y. 2023) ("The only fact defendant points to in support of its waiver argument is plaintiff's continued attendance of TNS after it moved online and received credits towards her degree. This act is equivocal at best and is not necessarily inconsistent with an intent to later sue for damages.").

[54] Def.'s Mem. Supp. Mot. Dismiss at 2 [Doc. No. 8].

[55] Pl.'s Resp. Opp'n Mot. Dismiss at 14 [Doc. No. 9].

[56] Compl. ¶ 31 [Doc. No. 1].

As previously discussed, the absence of an alleged price differential between Villanova's in-person and online offerings raises challenges with respect to proving damages. It is unclear what portion, if any, of Plaintiff's tuition payment was earmarked or can otherwise be attributed to opportunities specific to an in-person, on-campus education. However, given the differences between the fully remote education Plaintiff received and the in-person classes (and other on-campus benefits) for which she allegedly bargained, it is not facially implausible at this early juncture for Plaintiff to assert an entitlement to some *pro rata* amount of her tuition payment.[57] Accepting the allegations in the Complaint as true, as this Court must at the motion to dismiss stage, the Court identifies no basis for dismissal of Plaintiff's tuition claim.[58]

### 4.   Impossibility Is Premature and Does Not Bar Restitution

Villanova also asserts an impossibility defense. It is well established in Pennsylvania that contracts contain "an implied condition that after the making of the agreement, no law or governmental regulation will be enacted rendering continued performance of the contract unlawful."[59] Accordingly, if a party's "continued performance of a contract is rendered illegal by a subsequent governmental regulation," without the fault of that party, "his duty of rendering performance is discharged."[60] Villanova contends that the stay-at-home order issued by then-Pennsylvania Governor Tom Wolf rendered the provision of in-person education impossible, thereby discharging any obligation Villanova may have had to deliver on such a promise.

---

[57] *See, e.g.*, *Schultz v. Emory Univ.*, No. 20-2002, 2023 WL 4030184, at *9–10 (N.D. Ga. June 15, 2023) (holding at class certification stage that plaintiff presented articulable theory of class-wide damages by comparing tuition payments with the market value of online education received using a hedonic regression and conjoint analysis).

[58] Aside from its threshold arguments that no implied contract was ever formed, Villanova does not challenge Plaintiff's alleged entitlement to a portion of the General Fee and Health and Wellness Fee due to the discontinuation of on-campus services and amenities. Def.'s Mem. Supp. Mot. Dismiss at 15 [Doc. No. 8].

[59] *Burkus v. Henshall*, 126 A.2d 722, 725 (Pa. 1956) (citation omitted).

[60] *Id.*

As a threshold matter, Villanova has attached to its Motion to Dismiss the Executive Order issued by Governor Wolf on March 19, 2020, which, "effective immediately" and "until further notice," prohibited the operation of any "place of business in the Commonwealth that is not a life sustaining business . . . ."[61] Although this particular Executive Order is not referenced in or attached to the Complaint, this Court may take judicial notice of public documents, including executive orders, when their authenticity cannot reasonably be questioned.[62] Notably, the Complaint cites the March 13, 2020 statement from Villanova that the campus would be shut down, and that announcement began by referencing a similar mandate from Governor Wolf.[63] Plaintiff has stated explicitly that she is not challenging "Defendant's discretion in adhering to federal, state, and local health guidelines . . . ."[64] Accordingly, this Court holds that it is appropriate to take judicial notice of the March 19, 2020 Executive Order.

The Court agrees with Villanova that, so long as the Executive Order was in effect, performance of any implied contract to provide in-person education became impossible.[65] However, as Plaintiff correctly raises, there are unresolved questions of fact regarding whether the stay-at-home mandate prevented in-person classes for the entire semester. Additional discovery is necessary to clarify the extent to which Villanova was legally barred from

---

[61] Office of Governor Tom Wolf, The Governor of the Commonwealth of Pennsylvania Regarding the Closure of all Businesses That Are Not Life Sustaining (Mar. 19, 2020) [Doc. No. 8-3].

[62] *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (citing Fed. R. Evid. 201); *Clark v. Gov. of N.J.*, 53 F.4th 769, 772 n.5 (3d Cir. 2022) (citing *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 988 n.4 (3d Cir. 1983)).

[63] Villanova Univ., *March 13 Update from the President*, (Aug. 12, 2020, 11:54 AM GMT), https://www1.villanova.edu/villanova/studentlife/health/center/Coronavirus/mar-13-coronavirus-update.html [https://web.archive.org/web/20200613003830/https://www1.villanova.edu/villanova/studentlife/health/center/Coronavirus/mar-13-coronavirus-update.html].

[64] Compl. ¶ 12 [Doc. No. 1].

[65] *See Burt v. Bd. of Trs. of Univ. of R.I.*, 84 F.4th 42, 53–54 (1st Cir. 2023) ("Even if the [governor's] orders proscribing gatherings of more than five people might have allowed for small groups of in-person, on-campus instruction, the stay-at-home order shut the door on any such possibility.").

performing its alleged contractual obligations.[66] Moreover, as other district courts in this Circuit have recognized, the doctrine of impossibility at most excuses performance, but "[i]t does not entitle the party who had been obliged to perform . . . to retain the benefit provided by the other party . . . ." [67] Here, the benefit provided was the full tuition payment Plaintiff made to Villanova at the beginning of the Spring 2020 semester, and as further discussed below, Plaintiff has adequately alleged a claim for restitution even if Villanova's performance obligation was discharged on the basis of impossibility.

### B.  Unjust Enrichment

Under Pennsylvania law, a plaintiff bringing an unjust enrichment claim must allege that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated that benefit; and (3) the defendant retained the benefit under circumstances where it would be inequitable to do so without payment of value."[68] Pennsylvania law bars unjust enrichment claims when a contract governs the parties' relationships, but Rule 8(d)(3) of the Federal Rules of Civil Procedure permits claims of unjust enrichment to be pleaded "in the alternative where, as here, the existence or applicability of a contract is in dispute . . . ."[69] Additionally, a party has a claim in restitution for unjust enrichment if that party rendered performance under a contract which was later excused because of a change of circumstances.[70]

---

[66] In its Reply, Villanova cites to a press release from Governor Wolf relating to the phased reopening approach implemented in Pennsylvania. Def.'s Reply Br. Supp. Mot. Dismiss at 5 [Doc. No. 14]. The Court declines to take judicial notice of the press release, which was not attached to the Complaint and, in any event, is tied up in factual disputes inappropriate for resolution on a motion to dismiss.

[67] *Camden*, 2024 WL 760232, at *3 (citing *Ninivaggi*, 555 F. Supp. 3d at 53).

[68] *Hickey*, 81 F.4th at 316 (citing *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016)).

[69] *Hickey*, 81 F.4th at 315–16 (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).

[70] *Ninivaggi*, 555 F. Supp. 3d at 53 (citing Restatement (Third) of Restitution and Unjust Enrichment § 34; Restatement (Second) of Contracts § 272); *Camden*, 2024 WL 760232, at *3; *see also Meng*, 686 F. Supp. 3d at 320.

This Court has determined that the facts alleged in the Complaint plausibly support the formation of an implied-in-fact contract for in-person education in exchange for tuition and fees. If it is ultimately determined that the existence of an implied contract is not borne out by the facts, or that Villanova's performance obligations were excused by the impossibility doctrine, the remaining question is whether it was inequitable under the alleged circumstances for Villanova to retain Plaintiff's full payment of tuition and fees.

Villanova argues that "[i]t cannot be 'inequitable' for Villanova to retain the benefits of Plaintiff's tuition and fee payments when it did not promise Plaintiff in-person instruction and continued to provide benefits in the form of classes leading to credits in exchange for tuition."[71] In support, Villanova cites three cases from this district, none of which align with the facts of this case. In *Bradshaw v. Pennsylvania State University*, a former law student alleged unjust enrichment based on the retention of her tuition despite her dismissal from the university.[72] There were no allegations in that case that the format of the classes the plaintiff attended was materially different from what she expected when she paid her tuition. The claims in *David v. Neumann University*[73] and *Park v. Temple University*[74] similarly involved plaintiffs who were dismissed after having attended classes in the same format as expected.

This Court must apply the Third Circuit's holding in *Hickey*, which applies squarely to the facts alleged here: specifically, that a plaintiff may plausibly allege an unjust enrichment

[71] Def.'s Mem. Supp. Mot. Dismiss at 9 [Doc. No. 8] (citing *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016); *Park v. Temple Univ.*, No. 16-5025, 2019 WL 1865060, at *18 (E.D. Pa. Apr. 25, 2019)).

[72] 2011 WL 1288681, at *2.

[73] 177 F. Supp. 3d 920, 927.

[74] 2019 WL 1865060, at *18.

claim by pleading that a university inequitably retained tuition and fee payments despite having transitioned to remote learning during the COVID-19 pandemic. Here, as in *Hickey*, that contention is premised on unresolved questions of fact. It is unknown whether, as the Complaint alleges, "Villanova saved significant sums of money" by moving classes online, or whether "[t]he costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus."[75] But because the Court must accept the allegations in the Complaint as true, it holds that Plaintiff has sufficiently pleaded her claim of unjust enrichment for purposes of surviving Villanova's Motion to Dismiss.[76]

## IV.    CONCLUSION

For the reasons stated herein, Defendant Villanova University's Motion to Dismiss will be denied. An appropriate order follows.

---

[75] Compl. ¶¶ 75–76 [Doc. No. 1]; *Hickey*, 81 F.4th at 316; *see also Ninivaggi*, 555 F. Supp. 3d at 53.

[76] Villanova argues that a claim of unjust enrichment "makes little sense in this context" and suggests that such a claim can only be brought by a party who "performs some services," rather than by a party who makes a payment. Def.'s Reply Br. Supp. Mot. Dismiss at 8 n.5 [Doc. No. 14]. That argument is foreclosed by the Third Circuit's holding in *Hickey*. 81 F.4th at 316. Although Villanova maintains that *Hickey* was wrongly decided and has preserved its right to raise a challenge on appeal, Def.'s Mem. Supp. Mot. Dismiss at 6 n.4 [Doc. No. 8], this Court cannot disregard controlling precedent in this Circuit.